

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 31, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States* v. *Hassan Hubbard*, 25 Cr. 308 (AS)

Dear Judge Subramanian:

  The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for January 7, 2026. The parties' plea agreement stipulated that the defendant faces a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range of 135 to 168 months' imprisonment. For the reasons set forth below, the Government submits that a sentence within that range is appropriate to satisfy the purposes of sentencing.

  **A. Offense Conduct**

  As part of an ongoing investigation led by the Federal Bureau of Investigation and New York City Police Department, members of law enforcement identified the defendant as an individual who was trafficking firearms in the Bronx. (Presentence Investigation Report, dated November 24, 2025 ("PSR") ¶¶ 5–6).[1] Between March 2024 and May 2024, a member of law enforcement working in an undercover capacity (the "UC")—who was posing as a gun trafficker who purchased firearms in the Bronx and sent them to Jamaica for re-sale—met with the defendant on multiple occasions and purchased firearms and ammunition from him. (PSR ¶ 6). Several of the firearms that the defendant sold the UC had defaced serial numbers or had been reported stolen. (PSR ¶ 6). On each occasion, the defendant met with the UC inside, or in the vicinity of, the same apartment building in the Bronx. (PSR ¶ 6).

---

[1] Although the final PSR was scheduled to be released on December 29, 2025, at the time this submission was filed the final PSR has not yet been released. The Government has attempted to contact the assigned probation officer but has not yet heard back. In the event that any changes in the final PSR materially affect anything contained within this submission, the Government will notify the Court by supplemental letter.

Hon. Arun Subramanian                                                                                                 Page 2
December 31, 2025

     Specifically, on March 29, 2024, the defendant sold the UC two semi-automatic handguns—one of which was accompanied by a high-capacity magazine—along with approximately 150 rounds of ammunition. Those firearms and ammunition are shown below:



     Ten days later, on April 8, 2024, the defendant sold the UC five firearms—two of which were semi-automatic rifles—and over 500 rounds of ammunition.[2] (PSR ¶ 9). A photograph of the firearms is shown below:



---

[2] The PSR incorrectly states that the defendant sold the UC six firearms, instead of five firearms. (PSR ¶ 9).

Hon. Arun Subramanian							Page 3
December 31, 2025

 Later that month, on April 25, 2024, the defendant sold the UC five handguns and over 170 rounds of ammunition (PSR ¶ 10). The firearms and magazines are pictured below:



 And on May 24, 2024, the defendant sold the UC an untraceable, privately-made firearm, which is commonly referred to as a "ghost gun." (PSR ¶ 11). The firearm that the defendant sold the UC—a 9-millimeter pistol, which was loaded with ten rounds of ammunition—is shown below:



  **B. Procedural History**

 On July 16, 2025, a grand jury sitting in this District returned an indictment charging the defendant with one count of unlicensed dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A), and one count of possessing a firearm after a felony conviction, in violation of 18

Hon. Arun Subramanian  Page 4
December 31, 2025

U.S.C. §§ 922(g)(1) and 924(e). (Dkt. No. 2). Because the defendant committed the offense after sustaining three separate felony convictions for crimes of violence, the felon-in-possession count subjected the defendant to a 15-year mandatory minimum sentence of imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The defendant was arrested and presented the following day. (Dkt. No. 5).

On September 25, 2025, the defendant waived indictment and pleaded guilty to a superseding information that charged him with trafficking in firearms, in violation of 18 U.S.C. § 933(a)(2). (Dkt. Nos. 11–12). The defendant pleaded guilty pursuant to a written plea agreement with the Government (the "Plea Agreement") that contained a stipulated Guidelines calculation.

The offense level calculation in the Plea Agreement is consistent with the offense level calculation in the PSR, which found that the defendant's total offense level is 32. (*See* PSR ¶¶ 18–30). With respect to the defendant's criminal history category under the Guidelines, the parties' stipulation in the Plea Agreement diverges from the PSR's calculation, based on an amendment made to the Guidelines after the defendant pleaded guilty.

Specifically, the parties stipulated in the Plea Agreement that the defendant had three criminal history points. Those three points were based on the defendant's July 28, 1994 conviction and sentence—of 9 to 18 years' imprisonment—for a robbery committed on or about October 7, 1993. (*See* PSR ¶ 34). The concurrent sentences that the defendant received on the same day for other robberies (*see* PSR ¶¶ 34–35) were treated as single sentences under the Plea Agreement and did not receive points, and the defendant's other sentences (*see* PSR ¶¶ 32–33) did not result in criminal history points, given the amount of time that had passed.

The Guidelines that became effective on November 1, 2025—after the defendant pleaded guilty—added a provision stating that one criminal history point was to be added for each sentence for a crime of violence that did not receive points under U.S.S.G. § 4A1.1(a) through (c) because it was treated as a single sentence. *See* U.S.S.G. § 4A1.1(d). As detailed in the PSR, the defendant's July 28, 1994 sentence for robberies committed on October 7, 1993, included concurrent sentences for two counts—based on two separate robberies that the defendant participated in on October 7, 1993—as well as concurrent sentences for two other robbery counts for conduct the defendant committed on or about September 29, 1993, in a case that was separately docketed. (PSR ¶¶ 34–35). Put differently, on July 28, 1994, the defendant received concurrent 9-to-18-year sentences of imprisonment for four separate robbery counts. Accordingly, because the defendant completed his term of imprisonment for those crimes within 15 years of the instant offense, the PSR concluded that the defendant had six criminal history points: three points for one of the robbery convictions and sentences, and one point each for the other three robbery convictions and sentences. (*See* PSR ¶¶ 34–35; *see also* U.S.S.G. § 4A1.1 App. Note 4 (describing treatment of concurrent sentences—using example of robbery convictions—under new Guidelines provision)).

The additional criminal history points under the PSR increase the defendant's criminal history category to Category III, resulting in a Guidelines range of 151 to 181 months (which is 151 to 180 months, given the 180-month statutory maximum for the defendant's count of conviction). The Government stands by the Plea Agreement, however, and respectfully requests that the Court sentence the defendant consistent with a Guidelines range of 135 to 168 months' imprisonment.

### C. Discussion

#### 1. Applicable Law

As the Court is well aware, the Guidelines continue to provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6. To the extent the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 46).

#### 2. A Sentence Between 135 and 168 Months' Imprisonment Is Appropriate

A sentence within the Guideline range stipulated in the parties' Plea Agreement is necessary to reflect the seriousness of the offense, to provide specific and general deterrence, and to promote respect for the law.

The defendant sold 13 guns and over 800 rounds of ammunition. He transacted in discreet locations, like the hallway of an apartment building and the front seat of a car. Several of the guns he sold had defaced serial numbers. Given the circumstances of the transactions, the defendant could not have believed that he was selling the guns to legitimate dealers or owners. Unquestionably, he understood that the weapons he was selling were going to people who should not have them. And the defendant's role was not that of a mere middleman who put a seller in contact with a buyer. He possessed and transported the guns—in some of the sales, he carried out the rifles in a duffel bag. Any one of those guns, or the over 800 bullets the defendant sold, could have ended a life. It is fortunate that those semi-automatic rifles, stolen handguns, and high-capacity magazines are now in the custody of law enforcement. But from the defendant's perspective, he had every intention of putting those weapons into the community.

Not only is a significant sentence necessary in this case to reflect the seriousness of the offense, such a sentence is also necessary to deter and incapacitate the defendant. By virtue of the defendant's plea agreement with the Government, he will not be exposed to the 15-year mandatory minimum penalty in the Armed Career Criminal Act. But the spirit of the law certainly applies to the defendant: he is someone who has repeatedly served substantial prison terms for committing violent crimes, yet continued to possess—and, in this case, traffic—firearms. After having served two multi-year prison sentences for a knifepoint robbery and an attempted assault, the defendant committed a string of armed robberies. (PSR ¶¶ 32–35). One would have hoped that the approximately 15 years the defendant subsequently served in prison—spending most of his 20s and 30s incarcerated—would have deterred the defendant from ever breaking the law again. But the defendant chose to re-offend, selling assault rifles and defaced handguns. He did so when he was 52 years old, after having spent a collective total of about two decades in prison. And the

defendant's crime was not a one-time lapse in judgment, either. He met and communicated with the UC over a period of months, selling him weapons on four occasions. The defendant made the conscious, calculated decision to re-offend in a serious way—knowing full well the potential consequences of his decision—yet was not deterred.

Finally, a sentence between 135 and 168 months' imprisonment is necessary to promote general deterrence and respect for the law. Delivering several duffel bags with guns may seem to be a tempting way to turn a quick profit. But doing so eviscerates this city's gun laws. It puts guns in the hands of individuals who should not have them, and fuels the epidemic of gun violence. This Court should send a message to those who, like the defendant, decide that the benefits of firearm trafficking outweigh the risks. It should make clear that the justice system will not tolerate such behavior, and that those who traffic guns will face significant consequences.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: _____

Patrick R. Moroney
Assistant United States Attorney
(212) 637-2330

Cc (by ECF):  Kristoff Williams, Esq.